**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARY ANDERSON, | No. 18-35541 |
| Plaintiff-Appellant, | DC No. CV 17-0133 SLG |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted June 13, 2019
Anchorage, Alaska

Before:     TASHIMA, W. FLETCHER, and BERZON, Circuit Judges.

Cary Russell Anderson ("Anderson") appeals the district court's judgment

affirming the Commissioner of Social Security's (the "Commissioner") denial of

his application for Disability Insurance Benefits and Supplemental Security

Income benefits under Titles II and XVI of the Social Security Act.  We review de

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

novo the district court's decision affirming the denial of benefits, and we may reverse the decision of the administrative law judge ("ALJ") where that decision is based on legal error or where the findings of fact are not supported by substantial evidence. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

We hold that the ALJ committed reversible error in discrediting Anderson's subjective testimony. Where, as here, the ALJ has found that the claimant has "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged" and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quotation marks and citations omitted). Under the specific, clear and convincing standard, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Here, the ALJ rejected three portions of Anderson's testimony as not credible: (1)

Anderson's "pain related to psoriatic arthritis," (2) Anderson's "alleged difficulty using his hands," and (3) Anderson's alleged limited mobility.

**1.** The ALJ explained that Anderson's testimony regarding his severe pain was not credible because "in [Anderson's] treatment notes with [Nurse] Bushnell he frequently describes his pain as controlled on Percocet, and notes he uses an elliptical, as well as walks." These reasons for discrediting Anderson's pain testimony are neither clear nor convincing. Although Nurse Bushnell's treatment records did note that Anderson's pain was eased when he was on Percocet, the fact that Percocet eases some of Anderson's pain does not discount that he is indeed in serious pain. In fact, treatment records indicate he consistently complained of pain during his visits, sometimes quite significant pain, despite the Percocet. Nurse Bushnell, for example, reported that Anderson had "severe psoriasis" and pain at nearly every visit over the course of several years. Thus, evidence that Anderson's pain could, at times, be managed or reduced is not inconsistent with Anderson's descriptions of extreme pain.

Nor is a single medical record noting Anderson's occasional use of the elliptical inconsistent with Anderson's statements about pain, as Anderson does not assert that he is in extreme pain every minute of every day such that he can *never* be active. And, contrary to the ALJ's determination, Anderson's treatment records

supported Anderson's testimony regarding his limitations in movement. Nurse Bushnell noted that Anderson has "joint issues, difficulty walking, movement, weight bearing." Dr. Meinhardt similarly noted that Anderson had difficulty standing and climbing onto the exam table due to generalized joint pain, that Anderson made "all of his maneuvers quite slowly," and that Anderson had difficulty laying down supine and sitting back up due to low back pain. These observations in treatment notes are consistent across multiple years. Thus, the ALJ erred in discrediting Anderson's testimony on his limitations in movement.

**2.** The ALJ's explanation that Anderson's "alleged difficulty using his hands is not fully credible" because "he did not have demonstrated difficulty with manipulative activities during the record" is also insufficient: it is impermissibly vague because it does not "link that testimony to the particular parts of the record supporting [the] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1147–48 (9th Cir. 2001) (explaining that the ALJ may not "reject the claimant's statements regarding [his] limitations merely because they are not supported by objective evidence"). It is also not supported by the record, as multiple of Anderson's treatment records noted Anderson's arthritic hands and hand-related joint pain.

**3.** The ALJ's stated reasoning for discrediting Anderson's testimony that he had difficulty walking was also not clear and convincing. The ALJ explained that Anderson's testimony was contradicted by Nurse Bushnell's notes that Anderson had an "overall normal gait during examinations" and "[Anderson's] reported ability to walk and use an elliptical." This is not a sufficient reason. Although Nurse Bushnell's notes do state that Anderson had used an elliptical and had an " overall normal" gait, the fact that Anderson is able to walk or exercise occasionally is not "inconsistent with the pain-related impairments that [Anderson] described in [his] testimony." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with [a claimant's] testimony . . . because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.*; *see also Trevizo v. Berryhill*, 871 F.3d. 664, 679 (9th Cir. 2017) (noting that claimant with mobility issues because of psoriatic plaques on her feet had a normal gait). Further, as explained above, the treatment notes of Nurse Bushnell, Dr. Meinhardt, and others in fact support Anderson's assertion that he had difficulty moving and walking due to joint pain. Accordingly, the mere fact that Anderson could accomplish a few physical tasks

5

some of the time is not sufficient to discredit Anderson's testimony that he had difficulty walking.

• ● •

None of the ALJ's identified reasons for discrediting portions of Anderson's testimony is clear and convincing, and the remainder of the ALJ's discussion of Anderson's testimony related to "unspecified conflict[s] between Claimant's testimony," and merely "summarized the medical evidence supporting her [residual functional capacity] determination." *Brown-Hunter*, 806 F.3d at 494 (quotation

marks and citation omitted). The ALJ therefore committed legal error in discrediting Anderson's testimony.[1]

This error was not harmless. Had Anderson's testimony regarding his limitations been credited, the ALJ surely could not have concluded that Anderson was capable of performing most forms of light work—which includes jobs that "require[] a good deal of walking or standing," 20 C.F.R. § 404.1567(b). Further,

---

[1] The ALJ also suggested that Anderson's allegations regarding the extent of his psoriasis were not credible, citing to treatments records indicating Anderson's stability on Enbrel and the fact that "there is no evidence of suspicious lesions in the record." These reasons are not clear and convincing. The treatment records consistently indicated that Anderson had significant scaling areas of psoriasis. These scaling areas frequently covered large portions of his body, were painful, and would bleed. Further, the treatment records consistently indicated that although Anderson took Enbrel, it was not as effective as hoped for and often resulted in intolerable side effects. Lastly, "suspicious lesions" likely referred to cancerous lesions (*e.g.*, melanoma or other potential skin cancer), which has no bearing on whether or not Anderson has extensive psoriatic lesions.

Moreover, the ALJ made no effort to explain why many of the other limitations claimed by Anderson were not credible. In particular, Anderson testified and described in his written statement at great length that his daily life and activities are limited by extensive and regular bleeding caused by his psoriasis. The ALJ made no attempt to address these limitations or to explain why they should not be credited. Anderson also testified that he frequently became sick because the medicines he used to control his psoriatic arthritis suppressed his immune system, and that he was often severely fatigued after taking care of daily tasks like showering or spending an afternoon with his son. The ALJ likewise provided no basis not to credit this testimony. Thus, these claimed limitations should have been accounted for when determining Anderson's residual functional capacity. *See, e.g.*, *Trevizo*, 871 F.3d at 678 n.6; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

if Anderson's testimony had been credited, the ALJ would have had to determine that Anderson would have had to take much more extensive breaks during the course of the workday, and would have missed a substantial number of workdays during a month on account of his pain and bleeding. Accordingly, we reverse. and remand.[2]

**REVERSED and REMANDED** with instructions for the district court further to remand this case to the Commissioner to allow further development of the record by Anderson regarding his symptoms and limitations, and for reconsideration of the record evidence in light of this disposition.

---

[2] Because the ALJ's erroneous discrediting of Anderson's testimony alone warrants reversal, we need not and do not reach Anderson's other arguments.